**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Charles Bulson, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 16 C 50045 |
| | ) | |
| George Helmold, et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

**ORDER**

Helmolds and the Trust's motion to dismiss [8] is granted in part and denied in part. Count VI is dismissed but plaintiff is granted leave to file an amended complaint within 21 days if he wishes to add a request for punitive damages as a remedy for another claim. Lowmans' motion to dismiss [21] is denied.

**STATEMENT**

In his first amended complaint, plaintiff, Charles Bulson, a citizen of New York who owns land in DeKalb County, Illinois, has sued defendants, George and Joanne Helmold; George Helmold, Jr.; Randall and Paul Lowman; and the Linda R. Ripper Trust. It is alleged that George and George Jr. cut down trees and shrubs on plaintiff's property without his permission and did so as the agents of the other defendants. Plaintiff brings claims for a permanent injunction (Count I), trespass (Count II), violation of the Illinois Wrongful Tree Cutting Act ("IWTCA"), 740 ILCS 185/0.01, et seq. (Count III),[1] negligence (Count IV), punitive damages premised on Count III (Count VI),[2] and invokes this court's diversity of citizenship subject matter jurisdiction. See 28 U.S.C. § 1332(a)(1). Before the court are defendants' Rule 12(b)(1) and 12(b)(6) motions to dismiss for lack of diversity jurisdiction and failure to state a claim upon which relief can be granted.

**I. ALLEGATIONS**

The relevant facts are taken from plaintiff's first amended complaint and are presumed true for the purpose of resolving defendants' motions to dismiss. See Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC, 741 F.3d 819, 823 (7th Cir. 2014). Defendants are adjoining landowners to plaintiff's property. In paragraphs 2-4 of the first amended complaint, plaintiff alleges that the Helmolds own property immediately to the west and adjacent to plaintiff's property. To the

---

[1]Count III is mislabeled as Count IV in the first amended complaint.

[2]There is no count V in the first amended complaint.

north of the Helmolds' parcel, the Trust holds property which is also immediately west and adjacent to plaintiff's property. The Lowmans own the property immediately to the south and adjacent to plaintiff's property.

On February 28, 2015, George and George Jr. cut down and removed trees from, and also excavated upon, plaintiff's property "along the areas identified in ¶¶ 2-4." This activity occurred despite (1) plaintiff previously telling George not to perform any such action upon his land without obtaining a survey to determine which trees were on plaintiff's property, (2) a non-party neighbor telling them to stop, and (3) a deputy sheriff asking them to stop and to call plaintiff before cutting any more trees. It is also alleged that George and George Jr. were acting personally, in concert with the other defendants, and as agents for the Lowmans and the Linda J. Ripper Trust. In particular, it is alleged that:

> 25. George was also acting under the authority and permission of Defendant Lowmans, and therefore as their agent. The Defendant Lowmans, either personally or by their authorized agent, ripped, cut, burned and bulldozed upon the Plaintiff's property and further damaged and destroyed the Plaintiff[']s land that was part of the conservation reserve program [("CRP")], which is designed to rehabilitate the land for living creatures and improve the quality of neighboring farmland. See i.e. 2014 farm bill, P.L 113-79.
>
> 26. Ryne Loefel witnessed an individual use heavy machinery to perform excavation work upon Plaintiff's property after entering from the adjacent Lowman property, and said person being unknown to Plaintiff without discovery, is believed to be someone authorized to perform the excavating work by Defendant Lowmans.

With regard to this court's diversity of citizenship jurisdiction, plaintiff has alleged:

> 7. At the time of filing this suit as well as the date upon which the alleged injury occurred, jurisdiction is proper pursuant to 28 U.S. Code § 1332 because the parties are citizens of different states, none are corporations, limited liability companies, nor partnerships, and the amount in controversy exceeds the sum or value of $75,000.
>
> . . . .
>
> 27. A surveyor was subsequently summoned to inspect the property, and said inspection confirmed that trees and shrubs were cut, damaged, and killed by George and Junior upon and within the Plaintiff's property line.
>
> . . . .
>
> 30. The nature and extent of the damage inflicted to standing trees on or before February 28 and March 1, 2015, determined after Plaintiff retained a survey of the property, includes, but is not limited to: apple, maple, cherry, and dogwood species, having a cumulative diameter of 399 3/8 inches.
>
> 31. The costs necessary to replace and install the trees Defendants cut is approximately $225 [per] tree for a total cost in excess of $45,000.

2

> 32. In addition to the $45,000 in tree damages, additional damages incurred in order to restore and repair the property to its condition before Defendants' foregoing conduct is approximately $20,200.
>
> . . . .
>
> 56. Considering statutory treble damages [under the IWTCA] and remediation costs to the CRP, Plaintiff's statutory damages are at least $135,000.
>
> 57. As a result of Defendants actions and treble damages, Plaintiff has been injured and has sustained damages-in excess of $75,000.00.

In their motion to dismiss, the Helmolds and the Trust argue that plaintiff (1) has failed to establish the amount in controversy component of this court's diversity jurisdiction because he overstates the number of his trees that were cut down as well as the value of those trees, and (2) has failed to state a claim in Count VI because punitive damages are not a cause of action under Illinois law. The Lowmans also move to dismiss adopting and incorporating the lack of jurisdiction argument of the Helmolds and the Trust, and also arguing that plaintiff has failed to state a claim in Counts II, III, and IV.

## II. ANALYSIS

### A. Amount in Controversy

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction based on diversity exists if the amount in controversy exceeds $75,000, and the suit is between citizens of different states. See 28 U.S.C. § 1332(a). When the jurisdictional threshold is uncontested, the court will accept the plaintiff's good-faith allegation of the amount in controversy unless it "appears to a legal certainty that the claim is really for less than the jurisdictional amount." McMillian v. Sheraton Chi. Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009). But when the defendant challenges the plaintiff's allegation of the amount in controversy, the plaintiff "must support its assertion with competent proof" and must "prove the jurisdictional facts by a preponderance of the evidence." Id. If the defendant raises a "facial attack" against the complaint, arguing that the plaintiff has not sufficiently alleged a basis for subject matter jurisdiction, the court does not look beyond the allegations in the complaint when considering a Rule 12(b)(1) motion. See Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443-44 (7th Cir. 2009). If the defendant raises a "factual attack" against the complaint, arguing that the complaint is formally sufficient, but there is in fact no subject matter jurisdiction, the court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. Id. at 444. "A federal court sitting in diversity applies state substantive law." Thornton v. M7 Aerospace LP, 796 F.3d 757, 766 (7th Cir. 2015).

In their motions to dismiss, defendants contend that plaintiff has plead only $65,200 in quantifiable damages and impermissibly relies on the theoretical availability of punitive damages, costs, and statutory treble damages to reach the jurisdictional amount. Defendants contend that plaintiff has grossly overstated the total number of trees on his property that were actually cut or damaged, and that plaintiff has not provided evidence of the "stumpage value" which the IWTCA

3

trebles but, rather, provided evidence of the replacement value of the trees.[3]

In addition to taking issue with the contentions in defendants' motions to dismiss, in a declaration attached to his response, plaintiff swears that after his personal observation of the staking of the boundary lines in the spring 2015, "at least 135 trees upon my property have been cut and or subsequently killed due to the defendants cutting damage, for a total diameter of 399 3/8 inches of lost tree trunks." Plaintiff's brother, Dennis George Bulson, made the same sworn statement in his attached declaration and provided an itemized list of trees cut inside the south and west boarders of plaintiff's property. Illinois Professional Land Surveyor Franjo I. Maticic provided an affidavit in which he swears that he performed a survey of plaintiff's property to determine the location of the property lines and that the survey "locates some of the trees upon and on the Plaintiff's property line . . . which were visually confirmed as being cut." Also attached to plaintiff's response is the affidavit of Timothy Hund, of Classic Landscape, Ltd., who references and provides a copy of an invoice for $76,190 in costs and charges associated with replacing trees having a total of 399 3/8 inches in trunk diameter.

The trebling of statutory damages is not theoretical, it is expressly required by the IWTCA: "Any party found to have intentionally cut or knowingly caused to be cut any timber or tree which he did not have the full legal right to cut or caused to be cut shall pay the owner of the timber or tree 3 times its stumpage value." 740 ILCS 185/2. "'Stumpage' means standing tree." Id. at 185/1(a).

Defendants contend that plaintiff has failed to provide any evidence of the "stumpage value" of the trees which, according to defendants, is limited to the standing value of the trees to someone who would pay to cut and remove the trees. Defendants argue that because plaintiff has instead incorrectly equated "stumpage value" with the replacement value of the trees, "[t]here is absolutely no evidence before this Court as to the stumpage value of the plaintiff's trees" and, as a result, he has not proven a damage amount that can be trebled under the IWTCA. However, defendants' argument has been rejected in Marsella v. Shaffer, in which the Illinois Appellate Court explained:

> The Act expressly states that a plaintiff must be awarded three times the 'stumpage value' of the cut timber or trees, indicating a clear intention not to limit damages to the value of the trees as cut timber. See 740 ILCS 185/2 (West 1996). Further, the Act defines 'stumpage' as 'standing tree.' 740 ILCS 185/1(a) (West 1996). This definition does not include the word 'timber.' Defendants' interpretation turns the plain language of the Act on its head. Contrary to defendants' contention, there is nothing in the Act or case law indicating that recovery is limited to three times the value of the trees as cut timber. This would defeat the legislature's purpose 'to protect trees on private property.' Wujcik v. Gallagher & Henry Contractors, 232 Ill. App. 3d 323, 329 (1992). If cut trees could be valued only as cut timber, trees on residential property might be undervalued, thereby defeating the purpose of the Act. Thus, we cannot adopt defendants' interpretation.

---

[3] In their motions to dismiss, defendants mount a facial attack on the allegations in the first amended complaint. In response, plaintiff takes issue with defendants' contentions and also provides evidence. In their reply, without objecting to the submission of evidence by the plaintiff, defendants reference plaintiff's evidence in their argument and so the court will also consider plaintiff's evidence.

4

324 Ill. App. 3d 134 (2001) (emphasis in original). Moreover, before this quoted explanation, there is a discussion in the opinion indicating that either the trunk-value method or the replacement value of the trees would be an appropriate method of calculating "stumpage value" under the IWTCA. Id. at 417-18. Thus, treble damages under the IWTCA are clearly permitted, plaintiff has pleaded at least a $45,000 stumpage value, and now has provided evidence of a $76,190 stumpage value,[4] either of which trebled would exceed the $75,000 threshold. See LM Ins. Corp. v. Spaulding Enters., 533 F.3d 542, 551 (7th Cir. 2008) (holding that actual damages, including treble damages, and punitive damages can be counted towards the amount in controversy if they are allowed by state law).

Defendants argue further that even if replacement value is an appropriate way to compute stumpage value, plaintiff's evidence reinforces their argument that plaintiff is inflating his damages to reach the jurisdictional amount. In particular, defendants argue that plaintiff has submitted an estimate for the cost of installing 198 trees on his property, which far exceeds the 135 trees that plaintiff claims were cut or damaged. However, plaintiff is not claiming that 198 trees were cut or damaged. Instead he has measured the diameter of the trunks of the cut or damaged trees and calculated a total sum of almost 400 inches in trunk diameter. Rather than dividing this total by 135 which, presumably would result in a need for trees of varying or unorthodox diameter, plaintiff has contemplated approximately 200, 2 inch trunk-diameter trees, and has obtained an estimate for 196 maple or oak trees at $290 each and 2 apple trees at $425 each. In other words, plaintiff is not contemplating replacement on a tree-for-tree basis but, rather, is suggesting that 200, 2-inch trees will replace the wrongfully cut trees that had a cumulative diameter of approximately 400 inches. A similar cost-of-replacement method –contemplating replacement of a smaller number of varying-sized wrongfully-cut trees with a larger number of smaller uniformly-sized trees– was utilized in Marsella where the plaintiffs' arborist testified that:

> the cost of replacing the trees would be $8,350, representing the cost of planting 33 trees (smaller trees would be placed where the original 31 trees stood) six to eight feet tall costing $200 each for a cost of $6,600 with an additional $1,750 for removal of debris and repair work on the existing trees.

Id. at 137. Therefore, the court rejects the notion that plaintiff is inflating his damage by claiming more trees than were actually cut or damaged.

Although plaintiff has proven the potential of recovering an amount over the jurisdictional threshold with the statutory damages alone, the court notes further that plaintiff is also seeking punitive damages. While statutory treble damages and punitive damages cannot ultimately both be recovered, see id. at 143, for purposes of proving the amount in controversy plaintiff may also show a possible punitive recovery which could potentially exceed the threshold $75,000 amount by itself or in connection with, for example, a recovery under the common law intentional tort of trespass alleged in Count II. See Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1211 (7th Cir. 1995) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount."). "If punitive damages

---

[4]Defendants have also argued that there is no basis for recovering or trebling the $20,000 in replacement costs (staking the trees, applying mulch, and tanker waterings). Even assuming this is true, however, trebling the cost of the trees alone, $56,840, exceeds $75,000.

5

are available, subject matter jurisdiction exists unless it is legally certain that the plaintiff will be unable to recover the requisite jurisdictional amount." LM Ins. Corp., 533 F.3d at 551. No such legal certainty is present in this case.

For the foregoing reasons, the court finds that plaintiff has met his burden of establishing facts which show by a preponderance of the evidence that there is at least $75,000 in controversy in this case in satisfaction of that component of this court's diversity of citizenship subject matter jurisdiction. Consequently, defendants' Rule 12(b)(1) motions to dismiss for lack of jurisdiction are denied.

### B. Plausibility of Claims Raised in Counts II, III, IV, & VI

When deciding a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

The Lowmans argue that plaintiff fails to state a claim in Counts II, III, and IV because he has failed to plead sufficient factual allegations to support his claim that a principal-agent relationship existed between the Lowmans and George Helmold such that the Lowmans could be liable for the trespass, IWTCA, and negligence claims alleged in those counts. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. With regard to the IWTCA claim alleged in Count III, it is a fair inference from the allegations in the first amended complaint that when George and George Jr. were cutting and otherwise damaging trees and land along the property line between plaintiff's property and the Lowman's property they were acting at the direction or at least with the authority of the Lowman's. The IWTCA prescribes both intentionally cutting trees and knowingly causing trees to be cut. 740 ILCS 185/2. The trespass and negligence claims alleged in Counts II and IV are premised on the same conduct and are plausible based upon the same reasonable inference. It further appears that these counts have plausibility independent of any agency with the Helmolds based on the allegations in paragraph 26 that an individual was witnessed using heavy machinery to perform excavation work upon plaintiff's property after entering from the adjacent Lowman property. For these reasons, the Lowmans' Rule 12(b)(6) motion to dismiss Counts II, III, and IV is denied.

Citing Vincent v. Alden-Park Strathmoor, Inc., 241 Ill. 2d 495, 504 (2011), the Helmolds and the Trust argue that Count VI does not state a claim because punitive damages are a type of remedy, not a separate cause of action. The cases cited by plaintiff in support of his position that punitive damages is a separate claim do not contradict but, rather, apply Vincent. This is not to say, however, that punitive damages cannot be pled as a remedy for another claim in the first amended complaint as an alternative to a treble damage recovery under the IWTCA cause of action alleged in Count III. Moreover, the court disagrees that plaintiff has not plausibly alleged willful or malicious conduct,

6

or conscious disregard for plaintiff's rights. Consequently, Count VI is dismissed and plaintiff is given leave to amend if he wishes to seek punitive damages as a remedy for another claim.

### III. CONCLUSION

The Helmolds and Trusts' motion to dismiss is granted in part and denied in part. Count VI is dismissed but plaintiff is given leave to file an amended complaint within 21 days if he wishes to pursue punitive damages as a remedy for another claim. The Lowmans' motion to dismiss is denied.

Date: 10/11/2016

ENTER:

_____

FREDERICK J. KAPALA

District Judge